IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DERWIN WADE WYNN, § | |
| TDCJ-CID NO.1303629, § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION H-11-0991 |
| § | |
| VERNON PITTMAN, *et al.*, § | |
| Defendants. § | |

OPINION ON DISMISSAL

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, in which he complains that defendants have been deliberately indifferent to his serious medical needs. (Docket Entry No.1). Defendants Dr. Abbas Khoshdel, Physician Assistants Lloyd J. Aschberger and Tonil Deer, and former Practice Managers William Samarneh and Denise Box have filed a Motion for Summary Judgment. (Docket Entry No.23). In response to the motion, plaintiff has filed a Motion for Leave to File an Amended Complaint (Docket Entry No.44) and an Amended Complaint. (Docket Entry No.38). He has also filed two responses to defendants' Motion for Summary Judgment (Docket Entries No.42, No.43), a motion for a Preliminary Injunction and a Temporary Restraining Order (Docket Entry No.39), and various other motions.

After a thorough review of the record and the applicable law, the Court will grant plaintiff's Motion for Leave to File an Amended Complaint and defendants' Motion for Summary Judgment, and deny all other pending motions.

I. MOTION TO AMEND

Plaintiff seeks to amend his original complaint by dismissing defendants Denise Box, Lloyd Aschberger, and Vernon Pittman from this suit because plaintiff did not exhaust his

1

state remedies against such defendants and because he "has determined that the above named are not his cause of neglected adequate medical care." (Docket Entry No.44). Plaintiff's Motion for Leave to Amend Complaint is GRANTED. (*Id.*). Defendants Box, Aschberger, and Pittman are DISMISSED from this present suit.

## II. BACKGROUND

Plaintiff's pleadings show that before he was incarcerated, plaintiff suffered a severe neck injury. (Docket Entry No.12). Plaintiff claims that on June 5, 2009, he injured his lower back after sustaining a fall to the concrete floor; he was treated by medical personnel in the unit infirmary. (Docket Entry No.1). Plaintiff claims that thereafter, from June or July 2009, to the present, Dr. Abbas Khoshdel acted with deliberate indifference to the serious injuries plaintiff sustained from the fall as follows:

1. Delaying treatment;

2. Refusing to

    a. Allow plaintiff proper healing time,

    b. Give him a medical restriction to prevent his assignment to work duties, and,

    c. Place work restrictions on his Health Summary Sheet, thereby causing plaintiff to work beyond his physical abilities;

3. Suspending and canceling orthopedic appointments;

4. Refusing medical appointments;

5. Filing false reports of appointments;

6. Denying pain medication; and,

7. Ignoring prescribed medication, seat cushion, cervical pillow, and return visits to orthopedic specialists for steroid shots.

(Docket Entry No.38, pages 4-5).

Plaintiff also complains that on September 27, 2010, Physician Assistant Tonil Deer took away plaintiff's walking cane and submitted a fake medical report in plaintiff's medical files. He further complains that Deer "did everything possible to prolong needed medical treatment" for an infected toe. (Docket Entry No.38, page 5).

Plaintiff states no claims against defendant Samarneh in his First Amended Complaint. In his Original Complaint, plaintiff alleges that he sought Samarneh's assistance in obtaining the medical care he needed. (Docket Entry No.1, page 8). In his More Definite Statement, plaintiff alleges that Samarneh denied the grievances plaintiff filed related to his health care and disciplinary cases and failed to supervise Dr. Khoshdel. (Docket Entry No.12, pages 3-5).

Defendants move for summary judgment on the following grounds:

1. Plaintiff has failed to exhaust his administrative remedies against defendant Samarneh as required by 42 U.S.C. § 1997e(a); and,

2. They are entitled to Eleventh Amendment immunity and qualified immunity.

(Docket Entry No.23).

### III. DISCUSSION

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park,*

*Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

A. Exhaustion of Administrative Remedies

Plaintiff makes no mention of defendant Samarneh in his First Amended Complaint and the record shows that he filed no grievances against defendant Samarneh related to issues raised in this suit. (Docket Entries No.25-4 through No.25-14).

Section 1997e(a) of 42 United States Code, as amended by the Prison Litigation Reform Act, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory. *Booth*, 532 U.S. at 739. Consistent with Supreme Court precedent, the Fifth Circuit has also mandated that a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

TDCJ-CID currently provides for a two-step grievance procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired. *Id.* Compliance with the first step of an administrative grievance procedure will not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps. *See Wright*, 260 F.3d at 358.

Because plaintiff did not file a grievance against Samarneh, he has failed to exhaust his administrative remedies with respect to any claims against Samarneh. Therefore, all claims against Samarneh are subject to dismissal pursuant to 42 U.S.C. § 1997e(a).

B. Qualified Immunity

Plaintiff claims that medical providers Khoshdel and Deer were deliberately indifferent to his serious medical needs. (Docket Entry No.38). Defendants assert the defense of qualified immunity and allege that plaintiff has not shown the violation of his civil rights. (Docket Entry No.23).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court

has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id*. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id*. at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id*. Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. Moreover, an incorrect diagnosis does not state an Eighth Amendment claim because the deliberate

indifference standard has not been met. *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted). The same is true regarding the decision to treat an inmate in the Unit's medical department rather than to send him to outside medical providers or specialists. *See Alfred v. Texas Department of Criminal Justice*, 80 Fed. App'x 926, 927–28 (5th Cir. 2003). The question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Moreover, an inmate does not have a constitutional right to the treatment of his choice. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1150 (5th Cir.), *vacated in part as moot*, 688 F.2d 266 (5th Cir. 1982)). Mere disagreement with prison medical providers about what constitutes appropriate care does not rise to the level of a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Smith v. Allen*, 288 Fed. App'x 938 (5th Cir. 2008) (disagreement about treatment for shoulder injury).

### 1. Dr. Khoshdel

In his Original Complaint, plaintiff alleges the following: On July 13, 2009, Khoshdel disregarded plaintiff's reported ailments and ridiculed plaintiff about his weight. (Docket Entry No.1, page 6). Plaintiff requested pain relief and a cane. (*Id.*). Plaintiff was not restricted from work and suffered disciplinary action for his failure to report to work. (*Id.*). Khoshdel altered plaintiff's medical file and suspended or cancelled orthopedic appointments, thus delaying a proper medical evaluation and prolonging plaintiff's pain and suffering. (*Id.*). Khoshdel has prescribed little pain relief medication. (*Id.*)

In his More Definite Statement, plaintiff alleges the following: In June or July 2010, Dr. Khoshdel changed plaintiff's permanent medical restrictions to temporary restrictions even though these restrictions were related to plaintiff's pre-existing neck injury. (Docket Entry No.12, page 6). Khoshdel ordered x-rays of plaintiff's upper and lower back on July 24, 2009. (*Id.*, page 7). The radiology report showed a very slight wedging of the 12th dorsal. (*Id.*). Dr. Khoshdel did not inform plaintiff of this condition but told plaintiff that his injuries were very minor. (*Id.*). Khoshdel diagnosed plaintiff with arthritis. (*Id.*). When plaintiff questioned him about the pain he was suffering, Khoshdel dismissed plaintiff from the exam. (*Id.*).

On July 22, 2009, Khoshdel informed plaintiff that plaintiff's obesity was the cause of his injury. (*Id.*). Khoshdel denied plaintiff's request for a temporary unassignment from work; Khoshdel said, "You'll just lay around[.] [Y]ou're obsese enough." (*Id.*). Khoshdel refused plaintiff's request to see a specialist, claiming that he was a specialist. (*Id.*).

On September 25, 2009, Physician Assistant Ruby ordered x-rays of plaintiff's back; on October 6, 2009, Khoshdel once again diagnosed plaintiff with arthritis even though the new x-rays showed that the wedge compression was unchanged. (*Id.*, pages 7-8). Plaintiff claims that Khoshdel did not compare the two radiology reports. (*Id.*, page 9).

Although plaintiff informed Khoshdel about the shock to his tailbone and spine from the 2009 June fall on the concrete floor, Khoshdel told plaintiff that "the area you're complaining to have problems with has nothing to do with falling on your tailbone." (*Id.*, page 8). Later, Khoshdel refused to admit plaintiff into his office for a scheduled appointment, and stated, "I've already seen you. Leave." (*Id.*). Khoshdel also refused to allow plaintiff to see the x-rays taken from June 5, 2009, to the present. (*Id.*).

On July 22, 2009, Khoshdel misstated plaintiff's condition in a medical report by stating that plaintiff had remarked that he felt better; Khoshdel also made an incorrect notation about the condition of plaintiff's urine. (*Id.*, page 9). Plaintiff claims that he did not make such a statement and did not provide Khoshdel with a urine sample. (*Id.*). Plaintiff claims his chief complaint at that examination was the pain he suffered in his buttocks when he tried to void. (*Id.*).

Plaintiff claims the aforementioned events show that Khoshdel ignored the seriousness of a possible fracture and placed him at a higher risk of pain and suffering. (*Id.*). Plaintiff also claims that Khoshdel left plaintiff defenseless from disciplinary action for refusing to turn out for work because Khoshdel did not give plaintiff a medical unassignment or lay-in pass. (*Id.*). He also claims that because Khoshdel did not promptly provide plaintiff with a correct diagnosis, plaintiff is now at risk of permanent disability and enduring pain. (*Id.*).

Plaintiff claims that on March 31, 2010, Dr. Khoshdel set an appointment for plaintiff with Cyber-Care orthopedist Hanley, after plaintiff filed a grievance against Khoshdel on March 17, 2010. (*Id.*, page 10). On April 15, 2010, an MRI and medication were ordered. (*Id.*). On June 5, 2010, almost a year after the fall, plaintiff was given an MRI. (*Id.*). Plaintiff claims that Khoshdel deliberately delayed this "vital appointment." (*Id*.).

On February 10, 2010, Khoshdel was consulted about plaintiff's worsening condition but no appointment was set. (*Id.*). On February 17, 2010, Khoshdel conferred with another medical provider about plaintiff's request to renew his shower and cane pass. (*Id.*). Khoshdel took away plaintiff's cane pass and refused to continue the ground floor shower pass; plaintiff had to climb two flights of stairs to take a shower. (*Id.*). Plaintiff claims that

Khoshdel's conduct in this case was in retaliation for plaintiff filing a grievance against him. (*Id.*).

A radiology report dated February 19, 2010, showed that one vertebra was compressed by thirty percent with some bone spurring; otherwise, the MRI was inconclusive. (*Id.*, page 11). Khoshdel was consulted per plaintiff's sick call requests to see a doctor on February 1, 5, 8, and 14th but no appointment was set. (*Id.*). On April 4, 2011, plaintiff sought to renew his medication; he signed a refusal for treatment by Khoshdel and requested another provider because he feared retaliation from Khoshdel for filing the present suit. (*Id.*).

Plaintiff's medical records, however, show that he received medical treatment by Khoshdel and other providers on the Unit, as follows: After his fall on June 5, 2009, plaintiff was examined in the prison infirmary by the Unit's physician, who ordered x-rays of plaintiff's tail bone and pelvis and prescribed pain medication. (Docket Entry No.25-2, page 3). The initial read of the x-rays were negative. (*Id.*, page 6). Later, plaintiff was examined by the attending physician, who ordered pain medication, a two-week cell lay-in, low row restriction, crutches, a donut pillow, and a follow-up appointment. (*Id.*). The June 16, 2009, radiology report of the x-rays taken on June 5th showed a minimal deformity and no displacement; a hairline fracture could not be excluded. (Docket Entries 25-2, page 13; No.43-3, page 6). Dr. Stephen Bowers, defendants' medical expert, opines by affidavit that the x-ray showed that plaintiff did not have a neurological injury because there was no displacement; he further opines that the standard treatment for such an injury includes rest, a donut pillow, and pain medication, which were ordered. (Docket Entry No.25-1, page 3).

Plaintiff was seen by medical providers three times in late June for pain medication. (Docket Entry No.25-2, pages 14, 16). On July 2, 2009, he was examined by Dr.

10

Khoshdel pursuant to a sick call request. (*Id.*, page 20). Khoshdel diagnosed plaintiff with a possible fracture in his tail bone with no displacement and ordered a two-day cell lay-in, a cane for thirty days instead of crutches, pain medication, and restrictions included a low bunk and low row and sedentary work for thirty days. (*Id.*).

Following an examination on July 13, 2009, Khoshdel noted no changes from the appointment on July 2nd. (*Id.*, page 27). Khoshdel examined plaintiff on July 22, 2009, and noting that the exam was normal; Khoshdel ordered a lumbar spine x-ray. (*Id.*, page 29). Dr. Bowers attests that "[t]hese x-rays showed no change from the ones taken on June 5, 2009 thus assuring Dr. Khoshdel that no displacement had occurred." (Docket Entries No.25-1, page 4; No.43-3, page 8). Plaintiff's cane pass expired on August 12, 2009, and no request was received for another one until September 25, 2009, when plaintiff was examined by a nurse practitioner. (Docket Entry No.43-3, page 10).

The radiology report dated October 2, 2009, showed no significant changes from the prior x-ray dated July 24, 2009, but did show some early signs of osteoarthritis. (Docket Entries No.25-2, page 33; No.43-3, page 10). Dr. Bowers attests "[a]t this point in time, over three months had passed since Mr. Wynn's June 5, 2009 injury allowing ample time for the sacrum fracture to heal." (Docket Entry No.25-1, page 5).

On December 9, 2009, plaintiff complained to nurses of back pain; he walked with a limp and used the cane. (Docket Entry No.25-2, page 35). Plaintiff did not show for his scheduled appointment with Dr. Khoshdel on December 14, 2009. (*Id.*, page 37). Plaintiff was seen by a nurse practitioner on December 21, 2009, who noted that his lumber spine x-rays indicated arthritic changes. (*Id.*, page 42). Plaintiff did not show for scheduled appointments in late December 2009, and early January 2010, and refused an appointment on January 7, 2010.

(*Id.*, pages 49-52).  A February 18, 2010, appointment with the nurse practitioner was discontinued because plaintiff was uncooperative.  (*Id.*, page 57).  Another lumbar spine x-ray was ordered and plaintiff was scheduled for an orthopedic appointment in three weeks.  (*Id.*). The radiology report dated February 22, 2010, showed no changes in the wedge compression and similar appearances to the previous examination in July 2009.  (Docket Entries No.25-2, page 62; No.43-3, page 12).

Dr. Khoshdel renewed plaintiff's pain medications on March 8, 2010.  (Docket Entry No.25-2, page 63).  On March 9, 2010, after plaintiff complained of back pain in a sick call request, Dr. Khoshdel added a four-hour work restriction, no walking over 500 yards, no lifting over twenty-five pounds, and no climbing restrictions to plaintiff's Health Summary Sheet.  (*Id.*, page 67).

Plaintiff was examined by an orthopedic specialist on March 31, 2010.  (*Id.*, page 71).  The specialist determined that the x-rays showed a degenerative disc disease and ordered an MRI of the lumbar spine.  (*Id.*).  He also prescribed specific medication but did not order a cane pass.  (*Id.*).  Dr. Khoshdel complied with the specialist's prescribed medications and treatment. (*Id.*, page 73).  The June 5, 2010, MRI did not show degenerative disc disease but mild arthritis. (*Id.*, page 74).

On September 27, 2010, Physician Assistant Tonil Deer observed plaintiff holding the cane off the floor as he walked with a normal gait until plaintiff reached the examination table, where he leaned on the cane and moved with an exaggerated level of mobility.  (*Id*., page 82).  Deer also noted that plaintiff did not use a cane at his last appointment with her.  (*Id.*).  She consulted Dr. Khoshdel and he advised that plaintiff did not need the cane for mobility.  (*Id.*).  Dr. Khoshdel advised plaintiff that a cane was not medically necessary and

counseled plaintiff about weight loss during an examination on November 12, 2010. (*Id.*, page 85). Following a cyber-appointment with a physician assistant, who did not have access to the MRI, plaintiff was issued a cane pass on December 2, 2010. (*Id.*, page 88). On February 22, 2011, a nurse practitioner extended the cane pass, renewed pain medication, and issued a hall shower pass based on plaintiff's complaints of back pain. (*Id.*, page 92).

After plaintiff filed the present suit on March 14, 2011, he refused a scheduled appointment with Dr. Khoshdel. (*Id.*, page 96). Khoshdel, however, referred plaintiff to an orthopedic specialty clinic because of plaintiff's complaints of back pain and the wedge compression. (*Id.*, pages 97-98). The appointment was cancelled and later rescheduled by another provider. (Docket Entries No.25-2, pages 102-03; No.43-4, page 18). On December 6, 2011, plaintiff was seen in the Ortho Spine Clinic, where his previous x-rays and MRI were reviewed by the specialist. (Docket Entry No.44, page 15). The specialist recommended a conservative approach, which included physical therapy, pain medication, a cane pass, spine pillow, bottom bunk, medical unassignment, and a doughnut pillow. (*Id.*). Unit medical providers complied with the recommendations of the specialist. (Docket Entry No.25-1, page 7).

These records demonstrate that Dr. Khoshdel and other providers afforded plaintiff regular medical attention and care for his complaints of back pain thus, defeating plaintiff's claim of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (noting that "medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference"). Plaintiff was examined and treated by several providers, including Khoshdel, who ordered x-rays, twice referred plaintiff to a specialty clinic, prescribed pain medication, issued restrictions, and cane passes. Any delay in treatment for his other back issues does not amount to deliberate indifference, but constitutes

13

negligence at the most, which is not actionable under § 1983. Moreover, this record supports the uncontroverted affidavit testimony of defendants' expert, Dr. Steven Bowers, "that the medical treatment/care provided to Mr. Wynn by Dr. Khoshdel . . . [was] appropriate and performed within the proper standard of care. I believe any other reasonably well-trained physician . . . .under the same or similar circumstances and knowing what the defendants knew at the time, would have provided the same treatment/care and believed that doing so was responsible and done in good faith." (Docket Entry No.25-1, pages 8-9).

Plaintiff's summary judgment evidence does not raise a material fact question as to the medical care provided by Dr. Khoshdel and does not contravene the medical record and Dr. Bowers's affidavit regarding the standard of care given by Khoshdel. Plaintiff, therefore, has failed to overcome Dr. Khoshdel's entitlement to qualified immunity with respect to plaintiff's deliberate indifference claim.

Plaintiff's allegations of retaliation are speculative and self-serving. Plaintiff states no facts showing that Khoshdel acted with a retaliatory animus and no facts showing causation. *See Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (noting that to prevail on a claim of retaliation a prisoner must establish the following elements: (1) the violation of a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation). Plaintiff states nothing more than his personal belief that he is the victim of retaliation. Accordingly, plaintiff's retaliation claim against Dr. Khoshdel is subject to dismissal.

### 2. Physician Assistant Deer

In his Original Complaint, plaintiff alleges that Physician Assistant Tonil Deer took away his cane pass on September 27, 2010, and altered plaintiff's medical records, thus

concealing orthopedic appointments and delaying a proper medical evaluation. (Docket Entry No.1, page 7). In his More Definite Statement, plaintiff alleges that Deer refused to treat an infected in-grown toe nail on September 13, 2010, but gave him salt packs and instructed him to soak his toe. (Docket Entry No.12, page 13). When told that he did not have a container, Deer replied, "That's not my problem." (*Id.*). Later in September 2010, he begged Deer for antibiotics to treat the infection. (*Id.*). On September 27, 2010, Deer threatened to terminate an examination if plaintiff did not climb onto the examination table. (*Id.*, page 14). Deer also teamed up with Khoshdel to remove plaintiff's medically-prescribed cane, "leaving plaintiff in a disadvantage and a future risk of injury." (*Id.*).

Plaintiff's medical records show that plaintiff complained about toe pain to a nurse who observed an infection around the toe and after consulting with a provider, prescribed an antibiotic treatment. (Docket Entry No.18-1, pages 4, 5). Thereafter, Physician Assistant Deer twice examined plaintiff's toe. (Docket Entries No.25-2, page 78; No.18-1, page 2). On September 1, 2010, she noted that the toe had been treated with an antibiotic and that plaintiff complained of pain and a small amount of drainage. (Docket Entry No.18-1, page 2). She noted that that the toe was slightly red and had no thick drainage. She did not prescribe more antibiotics. (*Id.*). On September 13, 2010, Deer observed inflammation but no infection of the toe. (Docket Entries No.18-1, page 6; No.25-2, page 78). She prescribed an oral antibiotic and instructed plaintiff to soak his toe in warm water and salt, which he stated that he had been doing. (*Id.*). Without more, this record shows that Deer provided plaintiff medical attention for his toe, thus, defeating his claim of deliberate indifference. *See Banuelos*, 41 F.3d at 235.

As previously discussed, Deer examined plaintiff on September 27, 2010, where she observed plaintiff holding the cane off the floor as he walked with a normal gait until

15

plaintiff reached the examination table, where he leaned on the cane and moved with an exaggerated level of mobility. (Docket Entries No.18-1, page 9; No.25-2, page 82). Deer also noted that plaintiff did not use a cane at his last appointment with her. (*Id.*). She consulted Dr. Khoshdel and he advised that plaintiff did not need the cane for mobility. (*Id.*). Plaintiff turned in the cane. (*Id.*). Without more, plaintiff fails to show that Deer was deliberately indifferent to his serious medical needs, given her observation of him in the examination room.

With respect to his claims that Deer, Khoshdel, and others altered his medical records, plaintiff provides no credible evidence, beyond his own belief, to support this claim.

Accordingly, plaintiff fails to defeat defendant Deer's entitlement to qualified immunity.

### B. Sovereign Immunity

Defendants are entitled to Eleventh Amendment immunity for claims against them in their official capacity under § 1983. Congress has not waived sovereign immunity for § 1983 suits. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (noting that "neither a state nor its official acting in their official capacities are 'persons' under § 1983"). Defendants are employed as health care providers employed by UTMB, and UTMB is a state agency, immune from a suit for money damages under the Eleventh Amendment. *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). Therefore, all claims for monetary damages against defendants Khoshdel and Deer, in their official capacities, are subject to dismissal.

### C. Equitable Relief

Plaintiff's requests for a preliminary and permanent injunction are DENIED. Plaintiff has not prevailed on the merits of his claims. *See Planned*

*Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (enumerating elements required to obtain a preliminary injunction, which include a substantial likelihood that the movant will prevail on the merits, a substantial threat that he will suffer irreparable injury if the injunction is not granted, that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and that granting the preliminary injunction will not disserve the public interest; *see also PCI Transportation Inc. v. Fort Worth & Western Railroad Co.,* 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted) (cautioning that an injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements"). Nor has he shown an entitlement to a permanent injunction. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987) (recognizing that standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success).

Given the disposition of this case, the Court also finds that plaintiff has not shown the existence of a justiciable controversy that would entitle him to declaratory relief. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984) (noting that federal Declaratory Judgment Act is a procedural device that creates no substantive rights and requires the existence of a justiciable controversy). Accordingly, plaintiff's requests for equitable relief are DENIED.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Plaintiff's Motion for Leave to Amend Complaint (Docket Entry No.44) is GRANTED. Defendants Denise Box, Lloyd Aschberger, and Vernon Pittman are DISMISSED from this suit.

2. Defendants' Motion for Summary Judgment (Docket Entry No.23) is GRANTED. All claims against defendants Abbas Khoshdel, Tonil Deer, and William Samarneh are DENIED and this civil rights action is DISMISSED WITH PREJUDICE.

3. All other pending motions are DENIED, as moot.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 25th day of September, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE